# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UDUAK NELSON UDOH,<br><br>*Plaintiff*,<br><br>v.<br><br>MERRICK GARLAND, et al.,<br><br>*Defendants*. | Civil Action No. 21-1716 (RDM) |

## MEMORANDUM OPINION

Plaintiff Uduak Nelson Udoh, a native and citizen of Nigeria, brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, seeking review of U.S. Citizenship and Immigration Services' ("USCIS") denial of his I-140 petition for an employment-based immigrant visa. Dkt. 1 at 2–3 (Compl. ¶¶ 3–10); Dkt. 1-1 at 87–91. Pending before the Court is USCIS's motion, pursuant to 28 U.S.C. § 1404(a), to transfer the case to the Northern District of Texas, where Plaintiff's application was adjudicated. Dkt. 8 at 5–6; Dkt 1-1 at 87. USCIS also moves to dismiss this case under Federal Rules of Civil Procedure 12(b)(3) and (b)(6) for improper venue and failure to state a claim, respectively. Dkt. 8 at 6.

For the reasons set forth below, the Court will **GRANT** USCIS's motion to transfer the case to the Northern District of Texas.

## I. BACKGROUND

When evaluating a motion to transfer to a different venue, "a court should only consider undisputed facts supported by affidavits, depositions, stipulations, or other relevant documents." *One on One Basketball, Inc. v. Glob. Payments Direct, Inc.*, 38 F. Supp. 3d 44, 48 (D.D.C.

2014). The Court therefore draws the relevant facts from uncontested allegations in the complaint and documents submitted by Plaintiff, which are incorporated by reference.[1]

Plaintiff currently resides in Nigeria, Dkt. 2 at 1, where he holds a bachelor's degree from the University of Calabar, Dkt. 1 at 7 (Compl. ¶ 30); Dkt. 1-1 at 89. Plaintiff filed an Immigrant Petition for Alien Workers (Form I-140), which USCIS received on February 19, 2020. Dkt. 1-1 at 2. The petition sought an employment-based immigrant visa under Section 203(b)(2) of the Immigration and Nationality Act ("INA"). That provision makes visas available to "qualified immigrants who are members of the professions holding advanced degrees or their equivalent or who because of their exceptional ability in the sciences, arts, or business, will substantially benefit prospectively the national economy, cultural or educational interests, or welfare of the United States." 8 U.S.C. § 1153(b)(2)(A); Dkt. 1 at 5 (Compl. ¶ 20); Dkt. 1-1 at 2. The statute ordinarily requires visa applicants to show that their "services . . . are sought by an employer in the United States" by submitting evidence of a job offer from a U.S. employer. 8 U.S.C. § 1153(b)(2)(A). But the Attorney General may waive the job offer requirement "when [he] deems it to be in the national interest." *Id.* § 1153(b)(2)(B)(i). Plaintiff's petition sought a waiver pursuant to this exception. Dkt. 1 at 7 (Compl. ¶ 29).

USCIS processed Plaintiff's petition at its service center in Irving, Texas. *See* Dkt. 1-1 at 2, 30. On February 5, 2021, USCIS sent Plaintiff a Request for Evidence ("RFE"), asking him to

---

[1] On June 28, 2021, the same day that Plaintiff filed his complaint, Plaintiff filed an errata to the complaint. Dkt. 2. The errata does not state what errors in the complaint it purports to correct, but the only change the Court can discern is a modification to the caption, so that it now includes the addresses of the parties. *See id.* Because the substance of the second-filed complaint appears to be the same as the first, and because the errata is not styled as an amended complaint, *see* Dkt. 4 at 3 (standing order explaining that amended pleadings "must be accompanied by a redline comparison between the original and the amended filing"), the Court will refer only to the original complaint.

submit additional evidence in support of his petition. *Id.* at 26–30. Among other things, USCIS sought "[e]vidence in the form of letters from current or former employer(s) showing that [he] has a least five years of progressive post-baccalaureate experience in [his] specialty" and evidence "to establish that, on balance, it would be beneficial to the United States to waive the requirements of a job offer and thus of a labor certification." Dkt. 1 at 8 (Compl. ¶ 33); Dkt. 1-1 at 26–30. Plaintiff responded to the RFE on April 16, 2021, submitting "various letters" in support of his petition, Dkt. 1 at 9 (Compl. ¶ 36); an "independent Strength Analysis" of his application authored by "Joorney Business Plans" in Miami, Florida, *id.* at 3 (Compl. ¶ 7), *see also* Dkt. 1-1 at 50–84; and other supporting materials, *see* Dkt. 1 at 8–10 (Compl. ¶¶ 34–39).

USCIS denied Plaintiff's petition on May 24, 2021, in a letter signed by Kirt Thompson, Director of USCIS's Texas Service Center. Dkt. 1-1 at 87. In particular, the Texas Service Center determined that Plaintiff had failed to establish (1) that the "endeavor he propose[d] to undertake has significant potential to employ U.S. workers or otherwise offers substantial positive economic effects for our nation;" (2) that Plaintiff was "well positioned to advance the proposed endeavor;" or (3) that, "on balance, it would be beneficial to the United States to waive the requirement of a job offer, and thus a labor certification." *Id.* at 89–90.

This suit followed. Dkt. 1. On June 28, 2021, Plaintiff filed a complaint alleging that USCIS's decision denying his I-140 petition was arbitrary, capricious, and not in accordance with law, all in violation of the APA. *Id.* at 14–15 (Compl. ¶¶ 50–58). Plaintiff requests that the Court "[h]old unlawful and set aside the USCIS'[s] decision" and "[e]nter an order requiring the USCIS to approve Plaintiff's I-140 Immigrant Petition." *Id.* at 16 (Compl.).

On August 23, 2021, USCIS responded to Plaintiff's complaint with a motion to transfer the case pursuant to 28 U.S.C. § 1404(a), or, in the alternative, to dismiss this case pursuant to

Federal Rules of Civil Procedure 12(b)(3) and (b)(6) for improper venue and failure to state a claim. Dkt. 8. Plaintiff filed an opposition to transfer or dismissal, Dkt. 9, and USCIS filed a reply, Dkt. 10.

## II. ANALYSIS

Pursuant to 28 U.S.C. § 1404(a), the Court may transfer a case to "any other district or division where it might have been brought" for the "convenience of [the] parties and witnesses, in the interest of justice." In resolving a motion to transfer pursuant to Section 1404(a), the Court must answer two questions. First, the Court must determine whether the case could have been brought in the transferee district. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Second, the Court must decide whether the private and public interests favor transfer. *Aracely v. Nielsen*, 319 F. Supp. 3d 110, 127 (D.D.C. 2018); *see also Ike v. USCIS*, No. 20-cv-1744, 2020 WL 7360214, at *2 (D.D.C. Dec. 15, 2020). This requires the Court to consider the "preferred forum of the parties," "the location where the claim arose," and "other factors of convenience," as well as "the transferee district's familiarity with the governing law," "the relative congestion of the courts," and the "local interest in deciding local controversies at home." *Aracely*, 319 F. Supp. 3d at 128–30. In deciding whether to transfer the action, the Court must make an "individualized, case-by-case consideration of convenience and fairness." *Abusadeh v. Chertoff*, No. 06-cv-2014, 2007 WL 2111036, at *3 (D.D.C. July 23, 2007) (quoting *Barrack*, 376 U.S. at 622). As the moving party, USCIS bears the burden of justifying the proposed transfer. *Aracely*, 319 F. Supp. 3d at 127.

For the following reasons, the Court will transfer this action to the United States District Court for the Northern District of Texas, where the only action that is at issue in the proceeding took place.

A.     **Where the Action Could Have Been Brought**

Plaintiff argues that the Court "must initially determine whether venue in the District of Columbia is proper . . . before turning to . . . whether this action 'might have been brought' in the Northern District of Texas." Dkt. 9 at 9 (quoting 28 U.S.C. § 1404(a)). Plaintiff would be correct if USCIS had filed only a motion to dismiss for *improper* venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a). But where, as here, the defendant also seeks to transfer this case "[f]or the convenience of parties and witnesses, in the interest of justice," the Court need not consider at the outset whether this case could have been brought in this district. 28 U.S.C. § 1404(a). As the Supreme Court has explained, "§ 1404(a) does not condition transfer on the initial forum's being 'wrong.' . . . [I]t permits transfer to any district where venue is also proper (*i.e.*, 'where [the case] might have been brought') or to any other district to which the parties have agreed by contract or stipulation." *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 59 (2013) (quoting 28 U.S.C. § 1404(a)). The Court, accordingly, begins its analysis by considering whether venue is proper in the proposed *transferee* district. *Barrack*, 376 U.S. at 616. If not, that ends the inquiry, and the Court must deny the motion to transfer. But, if venue is proper in the proposed transferee district, the Court must proceed to the second step and decide whether the private and public interests at stake favor transfer.

Where an agency of the United States is the defendant, venue is proper "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or . . . (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). Plaintiff's I-140 petition was processed at USCIS's Texas Service Center in the Northern District of Texas. *See* Dkt. 1-1 at 2, 30, 87; *see also Ike*, 2020 WL 7360214, at *2 (stating that USCIS's Texas Service Center is located in the

Northern District of Texas). Therefore, because "a substantial part of the events . . . giving rise to [Plaintiff's] claim[s] occurred" in the Northern District of Texas, venue is proper in that district. 28 U.S.C. § 1391(e)(1); *accord Pasem v. USCIS*, No. 20-cv-344, 2020 WL 2514749, at *3 (D.D.C. May 15, 2020) ("In APA cases, the underlying claim typically arises 'where the decisionmaking process occur[s].'" (alteration in original) (quoting *Gyau v. Sessions*, No. 18-cv-407, 2018 WL 4964502, at *1 (D.D.C. Oct. 15, 2018)).

**B.     Private and Public Interests**

The private and public interests largely weigh in favor of transfer, with two exceptions. The relative congestion of the courts slightly weighs against transfer, and, the proposed transferee district's familiarity with the governing law is neutral. On balance, however, the scales tip in favor of transfer.

First, as to the preferred forum of the parties, USCIS prefers the Northern District of Texas, *see* Dkt. 8, while Plaintiff prefers to (and did) bring this case in the District of Columbia, Dkt. 1 (Compl.); *see also* Dkt. 9. Although courts generally defer to the plaintiff's choice of forum, *Gyau*, 2018 WL 4964502, at *2, that deference is lessened when the plaintiff's choice is not the plaintiff's home forum, *Abusadeh*, 2007 WL 2111036, at *4, and when the "plaintiff's forum choice 'lacks meaningful ties to the controversy and [has] no particular interest in the parties or subject matter,'" *S. Utah Wilderness All. v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2004) (alteration in original) (quoting *Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 144 (D.D.C. 1979)). Plaintiff does not dispute this conclusion and, instead, merely argues that "there are other private factors that weigh in favor of retaining this case in this district." Dkt. 9 at 11.

The remaining private and public interest factors, however, also weigh—on balance—in favor of transfer to the Northern District of Texas.  First, the controversy in this case turns on an adjudication that occurred in the Northern District of Texas, and "[c]ourts routinely recognize that cases challenging the denial of immigration-related petitions should ordinarily be decided in the district where the petition was processed and denied."  *Ike*, 2020 WL 7360214, at *3; *see also Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 330 (D.D.C. 2020) ("Venue is proper in the Central District of California because that is where the challenged federal action—[the California Service Center's] denial of [plaintiff's] [p]etition—occurred[.]").  To be sure, cases involving national immigration policies—and, in particular, policies developed or promulgated in the District of Columbia—are often maintained in this Court.  *See, e.g.*, *Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 56 (D.D.C. 2011) (denying a motion to transfer where "Plaintiffs' claims focus[ed] primarily on the policies issued from USCIS headquarters [in D.C.] that apply to all USCIS field offices"); *Salha v. DHS*, No. 20-cv-1102, 2020 WL 5505350, at *1–*2 (D.D.C. Sept. 11, 2020) (declining to transfer a case "seeking to compel [agency] Defendants to adjudicate [an] I-130 visa application" in part because "the claims in [the plaintiff's] complaint focus[ed] primarily on allegedly unlawful policy decisions made in Washington, D.C.").  But this case turns on the specific facts of Plaintiff's petition and the specific action taken by the Texas Service Center.  Nor is there any reason to believe that any Department of Justice or Department of Homeland Security officials located in (or near) the District of Columbia played any role in this matter.  The controversy is this case, accordingly, lacks any arguable nexus to this venue and, instead, arises solely from an adjudication that occurred in the Northern District of Texas.

Second, "to the extent that resolving this case might require any witness testimony or documentary evidence, those witnesses and documents are most likely to reside in Texas." *Ike*, 2020 WL 7360214, at *4. Plaintiff acknowledges as much, but he counters that "technological advances have significantly reduced the weight of the ease-of-access-to-proof factor." Dkt. 9 at 12 (quoting *Nat'l R.R. Passenger Corp. v. R. & R Visual, Inc.*, No. 05-cv-822, 2007 WL 2071652, at *6 (D.D.C. July 19, 2007)). But, in the unlikely event that this case will require any witness testimony, the relevant witnesses are almost certainly located in Texas. This consideration carries little weight, however, because this case will likely be resolved on the administrative record, which can easily be filed in either jurisdiction. Finally, to the extent any relief is granted in this case, it would require action, not by government officials in the District of Columbia, but solely by those located in the Northern District of Texas. Thus, to the extent the convenience of the parties or witnesses has any bearing on venue—although the Court doubts that it does—that consideration weighs in favor of transfer.

Third, the Court must evaluate "the relative congestion of the courts." *Aracely*, 319 F. Supp. 3d at 30. According to official reports, the median time "from filing to disposition of civil cases" as of June 30, 2021, was 13.2 months in the Northern District of Texas, as compared to 4.8 months in this district. *See* U.S. District Court—Federal Court Management Statistics— Profiles, United States Courts (June 30, 2021), https://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2021/06/30. Plaintiff argues that this difference is significant because it "will materially affect the timely resolution of [his] claims." Dkt. 9 at 14. USCIS, on the other hand, argues that "[t]hese statistics are not perfect indicators of court congestion as they may be influenced by additional factors" and "[d]epending on which metric a Court chooses to assess relative congestion, the weighing of this factor [often] points in different

directions." Dkt. 8 at 14 (quoting *Wolfram*, 2020 WL 8254881, at *8 (alterations in original)). The Court agrees with USCIS that these statistics are not particularly helpful in the present context because they do not differentiate between administrative law cases, like this one, that are typically resolved without discovery on cross-motions for summary judgment, and more typical civil litigation that often requires discovery and evidentiary proceedings.  Nevertheless, USCIS bears the burden, and it has failed to offer any *relevant* statistics bearing on the relative congestion between the two districts.  Accordingly, "the Court determines that the relative congestion between districts weighs against transfer, but only marginally." *Ike*, 2020 WL 7360214, at *4 (examining this Court's congestion as compared to the Northern District of Texas's).

Finally, the federal judges in the Northern District of Texas, like all federal judges, "are familiar with federal laws, including those at issue in immigration disputes." *Bahena*, 2021 WL 1820232, at *4; *see also Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 83 (D.D.C. 2009) ("The transferee district is presumed to be equally familiar with the federal laws governing [the plaintiff's] claims."); *Wolfram Alpha*, 490 F. Supp. 3d at 335; *Bourdon*, 235 F. Supp. 3d at 309; *W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 101 (D.D.C. 2013).  The relative competency of each jurisdiction is, accordingly, a neutral factor with respect to transfer.

In sum, the public and private interests weigh in favor of transfer, principally because the dispute at issue is limited to events that occurred in the Northern District of Texas, those events lack any connection to this venue, and Plaintiff resides outside the United States and has no identifiable interest in litigating in this venue.  The Court will, therefore, order this case transferred to the United States District Court for the Northern District of Texas.  In light of this

9

decision, the Court will not consider USCIS's motion to dismiss. Dkt. 8. *See Mohammadi v. Scharfen*, 609 F. Supp. 2d 14, 16 n.2 (D.D.C. 2009).

     A separate order will issue.

<u>/s/ Randolph D. Moss</u><br>
RANDOLPH D. MOSS<br>
United States District Judge

Date:  November 15, 2021